**FLORIDA PUBLIC SERVICE COMMISSION, Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 83–3268.

United States Court of Appeals, Eleventh Circuit.

Jan. 25, 1984.

Certiorari Denied March 26, 1984. See 104 S.Ct. 1686.

William S. Bilenky, Fla. Public Service Com'n, Tallahassee, Fla., for petitioner.

Sidney Strickland, ICC, Washington, D.C., John J. Powers, III, John P. Fonte, U.S. Dept. of Justice, Washington, D.C., for respondents.

Neill W. McArthur, Jr., Asst. Gen. Sol., Seaboard System R.R., Jacksonville, Fla., for Florida R.R.

Martha W. Barnett, Tallahassee, Fla., for Florida Phosphate Council.

Before GODBOLD, Chief Judge, TJOFLAT and HENDERSON, Circuit Judges.

BY THE COURT:

This case involves the Staggers Rail Act of 1980, Pub.L. No. 96–448, 94 Stat. 1895 (codified primarily in scattered sections of 49 U.S.C.). Section 214 of the Act, codified at 49 U.S.C. § 11501 (Supp. V 1981) provides in pertinent part:

§ 11501. Interstate Commerce Commission authority over intrastate transportation

(a) The Interstate Commerce Commission shall prescribe the rate, classification, rule, or practice for transportation or service provided by a carrier subject to the jurisdiction of the Commission under subchapter IV of chapter 105 of this title when the Commission finds that a rate, classification, rule, or practice of a State causes—

(1) between persons or localities in intrastate commerce and in interstate and foreign commerce, unreasonable discrimination against those persons or localities in interstate or foreign commerce; or

(2) unreasonable discrimination against or imposes an unreasonable burden on interstate or foreign commerce.

(b)(1) A State authority may only exercise jurisdiction over intrastate transportation provided by a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title if such State authority exercises such jurisdiction exclusively in accordance with the provisions of this subtitle.

(2) Within 120 days after the effective date of the Staggers Rail Act of 1980, each State authority exercising jurisdiction over intrastate rates, classifications, rules, and practices for intrastate transportation described in paragraph (1) of this subsection shall submit to the Commission the standards and procedures (including timing requirements) used by such State authority in exercising such jurisdiction.

(3)(A) Within 90 days after receipt of the intrastate regulatory rate standards and procedures of a State authority under paragraph (2) of this subsection, the Commission shall certify such State authority for purposes of this subsection if the Commission determines that such standards and procedures are in accordance with the standards and procedures applicable to regulation of rail carriers by the Commission under this title. If the Commission determines that such standards and procedures are not in such accordance, it shall deny certification to such State authority, and such State authority may resubmit new standards and procedures to the Commission for review in accordance with this subsection.

(footnote omitted).

The ICC began a proceeding to determine if the 40 states seeking certification were entitled to it. When the agency recognized in April 1981 that it could not make a

certification decision on the record then before it, it conditionally certified the 40 states and gave them additional time to file standards and procedures for agency review.

By decision served March 18, 1983, the ICC found some Florida Public Service Commission (FPSC) standards and procedures sufficient and others insufficient. The agency recommended (actually ordered) ways to correct the deficiencies and established a procedural schedule for the changes to be filed. In its decision, the agency stated:

We intend to issue a final decision relating to Florida's certification soon afterward. However, that decision may require further changes based upon the comments.

Florida's provisional certification will continue until a final certification decision is reached.

The agency also explained that "Florida must modify its standards [on exemptions] to reflect this conclusion [that states may not regulate traffic exempted by the ICC]."

FPSC filed its petition for review of the ICC order on April 18, 1983. The following day it amended its standards in all ways described in the March 18 order except for adoption of federal exemptions.

After this court granted the Florida railroads' petition to intervene, the railroads moved to dismiss for lack of jurisdiction because the March 18 order was not a "final order" of the agency. FPSC filed a response to the motion, as did intervenor Florida Phosphate Council, Inc. On July 1, 1983 a panel of this court ordered the motion carried with this case. On July 15, 1983 the ICC moved to dismiss for lack of a final order. On August 30, 1983 a different panel of this court ordered that the ICC motion be carried with the case.

This case was set for oral argument, and the panel before which it was scheduled to be heard, in preparation for oral argument, has carefully considered the record and the authorities. The court concludes that the March 18 order was not a final order of the ICC and consequently this court has no jurisdiction to review the case at this time. 28 U.S.C. § 2342(5) (Supp. V 1981).

[T]he relevant considerations in determining finality [of administrative orders] are whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action.

*Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970). Florida currently retains jurisdiction to regulate intrastate rates. At this moment no rights "have been determined" and the order is not a final one.

Furthermore, judicial action at this time could severely disrupt the administrative process. The March 18 order provides a schedule for interested parties to comment on Florida's standards and procedures. When the agency makes its final determination on Florida's certification, it may rely on concerns expressed in these comments. Until the final decision is rendered, the court cannot know either whether failure to adopt federal exemptions will result in denial of certification or what other grounds for denial the agency may use. Waiting for a final decision will both ensure an orderly administrative process and avoid piecemeal litigation.

Because we find the March 18 order was not a final order of the ICC, this appeal must be, and is, DISMISSED for lack of jurisdiction.